UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
(at Pikeville)

| | | |
|---|---|---|
| DAILY UNDERWRITERS OF AMERICA, INC., | ) ) ) | Civil Action No. 7:18-CV-034-CHB |
| Plaintiff, | ) ) | |
| v. | ) ) | **MEMORANDUM OPINION AND ORDER DENYING PETITION FOR** |
| JOHNNY CAUDILL, | ) ) | **DECLARATORY JUDGMENT** |
| Defendant. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

This matter is before the Court on Defendant Johnny Caudill's Motion to Dismiss, or in the Alternative, Motion to File Late Answer and Third Party Claims / Counterclaims. [R. 6]  On March 19, 2018 Plaintiff Daily Underwriters of America, Inc. brought this action for declaratory judgment pursuant to 28 U.S.C. § 2201 ("Declaratory Judgment Act"). [R. 1]  In lieu of an answer Defendant Caudill filed the Motion to Dismiss currently before the Court. [R. 6]  On May 9, 2018 the plaintiff filed its motion in response [R. 12] and on May 17, 2018 defendant filed its reply [R. 13].  For the reasons stated below, the Court declines to exercise jurisdiction pursuant to the Declaratory Judgment Act.

**I.   Factual Background**

On or about August 22, 2017 Defendant Caudill, an employee of L.M. Wright Trucking, Inc., was injured when the car he was driving collided with a vehicle operated by Ethan Adams. [R. 1 at p. 3]  At all times relevant to this dispute L.M. Wright Trucking carried a Commercial Auto Policy of Insurance with Daily Underwriters covering their commercial vehicles, including the one driven by Caudill. *Id.* at 2-3.  As a result of the collision Caudill made a liability claim against Ethan Adams, who tendered to Caudill the liability limits of his policy of motor vehicle

insurance provided by Kentucky Farm Bureau. *Id.* at 4. After asserting this claim against Adams, Caudill tendered a claim for underinsured motorist insurance benefits to Daily Underwriters, contending that he was entitled to "stack" underinsured motorists coverage for each of the 13 company vehicles covered by the Policy. *Id*. Daily Underwriters denied Caudill's claim that he is entitled to stack coverage, claiming that he is limited to recovery of $60,000 because he is not a named insured or family member as defined by the policy. [R. 12 at p. 3] On March 19, 2018 Daily Underwriters brought this declaratory judgment action seeking a declaration of rights with regard to whether or not Caudill was entitled to "stacked" benefits under the Policy. [R. 1] On April 11, 2018 Defendant Caudill brought suit in Letcher Circuit Court against the estate of Ethan Adams, Kentucky Farm Bureau Insurance Company, Daily Underwriters of America, and Rockhill Insurance Company seeking damages for allegedly significant personal injuries resulting from the crash. [R. 6-1]

## II. Legal Background

### a. Subject Matter Jurisdiction

Federal courts are courts of limited jurisdiction and therefore must have subject matter jurisdiction to hear a case. 28 U.S.C. § 1332 provides subject matter jurisdiction if the parties are from different states and the amount in controversy exceeds $75,000. Plaintiff claims that diversity of citizenship is met as the amount in controversy exceeds $75,000 and the parties are completely diverse. [R. 1] Because the defendant seeks $780,000 in the state insurance dispute [R. 1 at p. 4], the Court agrees that the amount in controversy requirement is satisfied and therefore the only question at hand is whether or not diversity is improper given the existence of non-diverse, mandatory parties. *Grange Mut. Cas. Co. v. Safeco Ins. Co. of America*, 565 F. Supp. 2d 779, 784 (E.D.Ky. 2008) ("when the applicability of an insurance policy to a particular

occurrence is the question, the amount in controversy is measured by the value of the underlying claim").

In his motion to dismiss the defendant claims that this Court does not have subject matter jurisdiction to hear the case as there are indispensable parties that would destroy diversity but which have not been joined to this suit. [R. 6] The defendant's motion is short on specifics and simply states that due to Fed. R. Civ. P. 19 the other parties to the underlying state court action must be joined "in order to prevent potentially inconsistent or unfair verdicts and for judicial economy." *Id*. The defendant does not give any reasons why the declaratory judgment action would cause potentially inconsistent or unfair verdicts or reduce judicial economy. Under the Sixth Circuit's three-part test a party is indispensable under Rule 19 if: (1) it is necessary, (2) its joinder cannot be effected, and (3) the court determines that it will dismiss the pending case rather than proceed in the case without the absentee. *Laethem Equipment Co. v. Deere & Co.*, 485 F. App'x 39, 44 (6th Cir. 2012). The initial burden rests with the moving party to show that the missing party is indispensable. *Boles v. Greeneville Hous. Auth.*, 468 F.2d 476, 478 (6th Cir. 1972).

Under Rule 19(a) a party is necessary if "in that person's absence, the court cannot accord complete relief among existing parties" or the un-joined party "claims an interest relating to the subject of the action and is so situated that disposing of the action in that person's absence" may impede on their rights or cause them to incur multiple or inconsistent obligations. Fed. R. Civ. P. 19(a)(1)(A)-(B). The Sixth Circuit has held that Rule 19 is "not to be applied in a rigid manner but should instead be governed by the practicalities of the individual case." *Smith v. United Bhd. of Carpenters & Joiners of Am.*, 685 F.2d 164, 166 (6th Cir. 1982). Further, "simply

because some forms of relief might not be available due to the absence of certain parties, the entire suit should not be dismissed if meaningful relief can still be accorded." *Id.*

Defendant has failed to show that the absent parties are required under Rule 19(a)(1)(A) because complete relief is possible between the present parties. Regarding completeness, the possibility of future litigation amongst the relevant parties does not mandate joinder, as Rule 19(a)(1) is concerned only with those who are already parties. *Sch. Dist. of Pontiac v. Sec'y of the United States Dep't of Educ.,* 584 F.3d 253, 265 (6th Cir. 2009). The relief being requested – a determination of the potential total liability between the defendant insured and the plaintiff insurer – can be completely decided without input from the other two insurers in the state action, neither of which is a party to the disputed insurance contract. Even though there exist other parties to whom a portion of the fault may be allocated, this does not mean that complete relief is impossible between the parties named in the suit. *See, e.g. Laethem Equipment Co.*, 485 F. App'x at 44. The fact that one of the other insurers might face some future claim for contribution or indemnification, as argued by the defendant, does not make them necessary parties for the purposes of Rule 19 as the Court can provide complete relief as to the question of stacking between the insurer and the insured named in this action.

The Court must next determine if the absent parties are necessary under Rule 19(a)(1)(B), considering if they have an interest relating to the subject of the action and whether or not their absence would risk impeding their ability to protect that interest or create a substantial risk of incurring multiple or otherwise inconsistent obligations. Fed. R. Civ. P. 19(a)(1)(B). First, it does not appear that the absent parties even have an interest in the subject of this action. *PrePaid Lab, LLC v. Lab. Corp. of Am. Holdings,* No. 5:11–cv–00509, 2011 WL 2532405, *5 (N.D. Ohio June 24, 2011) (finding that absent party was not a necessary party because, *inter alia,* it "is not a

signatory to the parties' contract and has no express legal rights or duties pursuant to the contract"). As noted by plaintiff in its response "[n]either Duke nor KFB are parties to the Policy, have duties or obligations that arise out of the Policy, or have any direct or indirect interest in the determination of rights and obligations under the Policy." [R. 12 at p. 8] Next, this action would not subject the absent parties to multiple or inconsistent obligations as the issue at stake only involves the parties to this action and any judgment rendered by this court would be binding in the state court action.

Because the Court finds that the absent parties are not required under Rule 19(a), it is not required to analyze joinder under 19(b). *Temple v. Synthes Corp.*, 498 U.S. 5, 8 (1990). Therefore, the Court will not dismiss the suit for failure to join an indispensable party under Rule 19.

      **b. Declaratory Judgment Act, 28 U.S.C. § 2201**

While the Court has jurisdiction to hear this action, under 28 U.S.C. § 2201 it must still decide whether jurisdiction is appropriate. The Declaratory Judgment Act provides that "[i]n a case or actual controversy within its jurisdiction … any court of the United States, upon the filing of an appropriate pleading, *may* declare the rights and other legal relations of any interested party seeking such declaration." 28 U.S.C. § 2201(a) (emphasis added). The Court is granted wide discretion and is "under no compulsion to exercise jurisdiction." *Brillhart v. Excess Ins. Co. of Am.*, 316 U.S. 491, 494 (1942). The Sixth Circuit's *Grand Trunk* factors guide district courts when deciding whether to exercise jurisdiction under § 2201. These factors are:

1. Whether the declaratory action would settle the controversy;
2. Whether the declaratory action would serve a useful purpose in clarifying the legal relations in issue;

3. Whether the declaratory remedy is being used merely for the purpose of procedural fencing or to provide an arena for a race for *res judicata*;

4. Whether the use of a declaratory action would increase friction between our federal and state courts and improperly encroach on state jurisdiction; and

5. Whether there is an alternative remedy which is better or more effective.

*Grand Trunk W. R.R. Co. v. Consol. Rail Corp.*, 746 F.2d 323, 326 (6th Cir. 1984). The Sixth Circuit has noted that these factors are not given any particular weight, and are meant to focus the district court on three things in light of the facts of the case: efficiency, fairness, and federalism. *Western World Ins. Co. v. Hoey*, 773 F.3d 755, 759 (6th Cir. 2014) (internal citations omitted). Therefore, "a relatively efficient declaratory judgment (Factors 1, 2, and 5) could very well be inappropriate if hearing the case would be unfair (factor 3) or would offend the bundle of principles we generally label 'federalism' (Factor 4)." *Id*.

### i. Factors 1 & 2

The first two factors are closely related and therefore often considered together. *Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 557 (6th Cir. 2008). The Sixth Circuit has developed split lines of precedent concerning these two factors, each discussed in turn below.

The first factor to consider is whether the district court's judgment would settle the controversy. One line of cases has held that this factor is met if the declaratory action can settle the insurance coverage controversy presented, even though it will not resolve the underlying state court action. *Northland Ins. Co. v. Stewart Title Guar. Co.*, 327 F.3d 448, 454 (6th Cir. 2003) ("[W]hile the declaratory judgment would not end the dispute … it would settle the controversy regarding the scope of insurance coverage issued by Northland to Cailu, and whether Northland had a duty to defend."). A second line of cases has held that although such

declaratory actions might clarify the legal relationship between the parties, they ultimately fail factor one analysis by failing to settle the ultimate controversy between the parties which is on-going in state court. *Travelers Indem. Co. v. Bowling Green Prof'l Assoc., PLC,* 495 F.3d 266, 271 (6th Cir. 2007) ("Granting the declaratory relief sought by Evanston and Travelers settles the scope of the insurance coverage under the respective policies and clarifies their obligation to defend Bowling Green in the state court action, but it does nothing to 'clarify the legal relationship' between the other parties."); *See also State Farm Fire & Cas. Co. v. Odom*, 799 F.2d 247, 251 (6th Cir. 1986) (Merritt, J., dissenting) ("[D]eclaratory judgment actions seeking an advance opinion on indemnity issues are rarely helpful when there is an ongoing action in another court … Such actions seldom resolve the entire dispute among the parties and they create confusion among courts as to schedules, orderly resolution of factual disputes and *res judicata*.").

The Sixth Circuit has provided similarly conflicting guidance on factor two, "whether the district court's decision must only clarify the legal relations presented in the declaratory judgment action or whether it must also clarify the legal relations in the underlying state action." *Scottsdale,* 513 F.3d at 557. In *Scottsdale* the Sixth Circuit held that in order for a declaratory judgment to satisfy factor two it must simply provide a final resolution of the discrete dispute presented and need not settle all the relations in state court. *Id.* On the other hand the *Travelers* court held that the second factor was not met when the judgment would not clarify the legal relations between the other parties to the state court action who may have been potentially affected by the judgment. *Travelers Indem. Co.*, 495 F.3d at 272; *Bituminous Cas. Corp. v. J&L Lumber Co.,* 373 F.3d 807, 814 (6th Cir. 2004) ("[A]lthough a declaratory judgment would clarify the legal relationship between Bituminous and J & L pursuant to the insurance contracts,

the judgment would not clarify the legal relationship between Shields and J & L in the underlying state action.").

In *Scottsdale* the Sixth Circuit explained this split as a result of "the different factual scenarios" present in each line of cases and counseled the district courts to weigh the facts by looking to "whether the question was already being or could be considered in state court, whether the parties were the same in state and federal court, whether parties in the state action would be bound by the federal court action to which they were not a part, whether the issue was one being developed by state court discovery, and whether the scope of coverage or obligation to defend was before the state court." *Scottsdale*, 513 F.3d at 555-56. More succinctly, then-District Judge Amul Thapar phrased the question as: "can the federal court decide every aspect of the case or only part of it?" *Grange Mut. Cas. Co.,* 565 F. Supp. 2d at 787.

Several district courts have grappled with this problem in the context of plaintiffs seeking declaratory judgments to limit liability under contracts for "stacked" insurance coverage. In *Motorists Mut. Ins. Co. v. Thacker Memorial Inc.* the dispute centered on whether the plaintiff insurer would have to provide for "stacking" of the defendant insureds claims. *Motorists Mut. Ins. Co. v. Thacker Memorial Inc.*, 679 F. Supp. 2d 802 (E.D.Ky. 2010). The court found the first factor missing as a ruling on the declaratory judgment action would only resolve the stacking issues but would not resolve whether the defendant was entitled to underinsured motorists benefits in the first place. The state court would still have to resolve the underlying liability, causation, and damages issues in order to determine if the underinsured motorist provisions would even apply before reaching the potential issue of claim stacking. *Motorists*, 679 F. Supp. 2d at 808. As for factor two the court went on to state that while the federal action would resolve a legal issue between two of the parties, the final question of how much money the

injured defendant would be allowed to recover would require further analysis as the relation between the three parties in the state suit would remain unresolved by the federal action involving just two of the parties. *Id*.

In *Countryway Ins. Co. v. Pittman* insureds brought suit against the alleged tortfeasor and their insurance company for compensatory damages resulting from a traffic accident and also stated causes of action for uninsured motorist benefits coverage, violations of the Kentucky Consumer Protection Act and Kentucky Unfair Claims Settlement Practices Act, and common law bad faith. *Countryway Ins. Co. v. Pittman*, No 5:12-CV-00146-TBR, 2013 WL 416294, *1 (W.D.Ky. Jan. 31, 2013). The insurer defendant argued that because they had already paid the base $60,000 they felt they owed under the insurance contract, a decision as to any additional "stacking" would settle the plaintiff's claims of bad faith violations of the Kentucky Consumer Protection Act because their liability would be discharged by the payment. *Id.* at *2. But because the first element of a bad faith claim is that the insurer must have an obligation to pay, a decision that the company had paid what it was obliged would not necessarily end the controversy whether the plaintiffs were entitled to additional relief against the defendant. *Id*. As a result, the declaratory judgment would only resolve the issue of stacking and the state court would still have to hear at least one claim between the two parties. Analyzing both the first and second element together, Judge Russell found that they weighed against exercising jurisdiction. *Id*.

Given the similarity of the underlying claims, the Court is persuaded by the reasoning in *Motorists* and finds that factor one and factor two, considered together, weigh against exercising jurisdiction. This Court's ruling on the declaratory judgment action would only determine whether Caudill is entitled to stacking should he prove that he is entitled to underinsured

motorists coverage at all. Before reaching this issue, the state court would still need to determine not only that Mr. Adams was at fault in the underlying car crash but further that Caudill's injuries were severe enough to entitle him to the underinsured motorist coverage as provided by his employer. [R. 13 at p. 2]

The decision in this action would not resolve the entire dispute between the parties, rather it would help to clarify one legal relationship between them - whether the policy at issue provides for stacking. Importantly, however, this would not resolve all of the issues between the two parties as they will still need to litigate the underlying issues of causation, liability, and damages implicated by Caudill's state claims. As plaintiff notes in its response, the issue of stacking "is a subsidiary issue among several." [R. 12 at p. 21] While this Court may be able to provide an efficient resolution to the discrete issue of stacking, the legal relationship between the parties would still require further adjudication in the state court to truly be settled.

### ii. Factor 3

The third factor is whether the declaratory remedy is being used for the purposes of "procedural fencing" or "to provide an arena for a race to res judicata." "The question is … whether the declaratory plaintiff has filed first in an attempt to get [its] choice of forum." *AmSouth Bank v. Dale*, 386 F.3d 763, 789 (6th Cir. 2004). The Sixth Circuit has advised that courts should be "reluctant to impute an improper motive to a [declaratory judgment] plaintiff where there is no evidence of such in the record," however this factor can "preclude jurisdiction for declaratory plaintiffs who file their suits mere days or weeks before the coercive suits filed by a natural plaintiff and who seem to have done so for the purpose of acquiring a favorable forum." *Scottsdale Ins. Co.*, 513 F.3d at 558. Relatedly, the Sixth Circuit has given a declaratory

judgment plaintiff the benefit of the doubt that no improper motive fueled the filing of its action where it was filed *after* the state court litigation has begun. *Bituminous,* 373 F.3d at 814.

While defendant has not pointed to any evidence in the record to show an improper motive, the Court notes that the plaintiff filed this action in federal court nearly a month before the defendant filed his action in state court and after it received his claims for underinsured motorist coverage. Given the timing of this action and the relief requested, it seems apparent that the plaintiff is attempting to file first to limit the extent of its liability in the subsequently filed state court action. While the record's lack of an improper motive mitigates the force of this factor, the Court still finds that it weighs slightly against the exercise of jurisdiction.

### iii. Factor 4

The fourth factor assesses the degree to which the declaratory judgment would increase friction between the federal and state courts. The Supreme Court has admonished that a "district court might be indulging in 'gratuitous interference' if it permit[s] the federal declaratory action to proceed" simultaneously with a state court action involving the same parties and state law issues. *Wilton v. Seven Falls Co.,* 515 U.S. 277, 283, 115 S.Ct. 2137 (1995) (quoting *Brillhart*, 316 U.S. at 495). The Sixth Circuit has identified three additional sub-factors to consider for factor four:

1. Whether the underlying factual issues are important to an informed resolution of the case;

2. Whether the state trial court is in a better position to evaluate those factual issues than is the federal court;

> 3. Whether there is a close nexus between the underlying factual and legal issues and state law and/or public policy, or whether federal common or statutory law dictates a resolution of the declaratory action.

*Scottsdale Ins. Co.,* 513 F.3d at 560.

District courts have held that the first factor weighs in favor of exercising jurisdiction where the declaratory judgment action presents purely a question of law that does not require factual findings by the court. *Countryway Ins. Co.*, at *4.

For the second factor, the state courts are normally in a better position to resolve insurance issues because insurance companies are regulated by state law for the benefit of their citizens. *Scottsdale*, 513 F.3d at 561. A federal court might be an inferior forum if the court is required to assess questions of fact that involve parties not present in the federal action. *Motorists*, 679 F. Supp. 2d at 809-10. However, this factor can be satisfied if the court is presented with a pure question of law that does not require any factual determinations. *Countryway Ins. Co.*, at *4.

The third factor focuses on whether the factual and legal issues implicate important state policies. The Sixth Circuit has recognized in several cases that states are in a better position to resolve insurance disputes because they are more familiar with state law, they regulate insurance companies for the benefit of their citizens, and are best situated to identify and enforce the policies underlying those regulations. *Scottsdale*, 513 F.3d at 561 (citing *Bituminous*, 373 F.3d at 815).

This factor is a narrow call. As discussed above, resolution of the issue before the Court does not require reliance on factual findings by the state court as the question is one of contract interpretation and therefore counsels in favor of finding jurisdiction appropriate. On the other

hand, the contract in question is for insurance, an area of law largely reserved to state courts for resolution and one which implicates important state law policies. Furthermore, the development of case law concerning insurance disputes in Kentucky is better left to its state courts. Ultimately, this Court finds that the state court would be in a better position to answer the question of stacking. The claims presented in the state court action are entirely under state law, and the Court is hesitant to make a piecemeal determination regarding this litigation.

### iv. Factor 5

The final factor is the availability of an alternative remedy in the state court. As a general matter KRS § 418.040 provides for declaratory relief in a similar fashion to 28 U.S.C. § 2201. Courts in the Sixth Circuit have split regarding whether the state court remedy must be better or more effective than a federal declaratory action in order to satisfy this factor. *Scottsdale,* 513 F.3d at 562. The Sixth Circuit has cautioned, however, that declaratory judgment actions seeking an advance opinion should normally be filed, if at all, in the court that has jurisdiction over the suit giving rise to the indemnity problem to avoid problems of scheduling, orderly presentation of the issues, and res judicata. *Bituminous,* 373 F.3d at 812. In *Countryway*, for example, the court held that this factor was not met because while the federal court would only be able to address the limited issue of stacking, the state court would be able to address all the issues in the case and therefore provide more comprehensive and complete, and therefore better, relief. *Countryway*, 2013 WL 416294 at *4.

Because the current suit asks the district court only to rule on the issue of stacking under the relevant insurance policy the Court finds that this factor weighs against the exercise of jurisdiction. While this Court may be able to adequately dispose of the discrete issue of stacking, it is mindful of the Sixth Circuit's guidance regarding advance opinions in cases in which the suit

- 13 -

giving rise to the question is not before it.  While this Court may be able to render a discreet ruling on this issue, the Court finds that potential concerns over scheduling, orderly presentation of the issues, and res judicata would only be exacerbated by an advance opinion in this matter.

The *Grank Trunk* factors present a mixed bag in light of the specific facts in this case. Nevertheless, using these factors as a guide in determining how to exercise its discretion, and given that this is a Court of limited jurisdiction, the Court concludes that it should not exercise jurisdiction in this matter.  The state court can decide every issue among the parties, and the central issue – insurance – is a matter regulated by state law.  The state law remedy will provide efficiency and completeness.

### III.    *Colorado River* Doctrine

The *Colorado River* Doctrine is an abstention doctrine that counsels district courts to decline to exercise jurisdiction in limited circumstances where there are concurrent state and federal proceedings. *Colorado River Water Conservation Dist. v. U.S.*, 424 U.S. 800, 813 (1976). Because the Court does not find a declaratory judgement to be appropriate in this case, it will decline to reach the issue of whether or not there exist "exceptional circumstances" warranting the application of the *Colorado River* doctrine. *U.S. Fire Ins. Co. v. Albex Aluminum, Inc.*, 161 F. App'x 562, 564 (6th Cir. 2006).

### IV.    Conclusion

For the reasons stated herein the Court declines to exercise jurisdiction pursuant to the Declaratory Judgment Act

**IT IS HEREBY ORDERED** as follows:

1.  Defendant's motion [**R. 6**] is **GRANTED**.

2. The Court declines to exercise its jurisdiction under the Federal Declaratory Judgment Act, 28 U.S.C. § 2201, and this matter is **DISMISSED WITHOUT PREJUDICE**.

*Claria Horn Boom*
CLARIA HORN BOOM,
UNITED STATES DISTRICT COURT JUDGE
EASTERN AND WESTERN DISTRICTS OF
KENTUCKY